# Morningstar *v.* Wiggins & McMillan.

*Detinue.*

1. *A charge, which leaves a fact, growing out of a contract to be ascertained by the jury is not erroneous.*—When from the terms of a contract for the delivery of timber, the court can construe a "stipulation to give a lien and mortgage on timber" as fast as gotten out, "to embrace" timber in existence when the contract was made, as well as timber to be manufactured afterwards, a charge which leaves this fact to be ascertained by the jury from the evidence, is not erroneous.

APPEAL from the Circuit Court of Escambia.

Tried before the Hon. JOHN K. HENRY.

C. L. Wiggins and Neil McMillan, partners under the firm name of Wiggins & McMillan, commenced an action of

·detinue in the Circuit Court of Escambia county, against Henry Morningstar, to recover "twenty-six pieces of square pine timber." The defendant pleaded the general issue.

On the trial, the plaintiffs offered in evidence the following instrument, viz:

" This agreement, made and entered into this the 27th day of November, 1873, by and between Joseph W. Kelly, of Escambia county, State of Alabama, and Wiggins & McMillan, of Pollard, Alabama, witnesseth, that the said Joseph W. Kelly, does hereby sell, and agree to deliver, to the said Wiggins & McMillan, or their authorized agent, at Ferry Pass, in Escambia county, State of Florida, during the ensuing season, the following pitch-pine timber, to say, (100) one hundred pieces at the following scale of prices, to-wit: Thirteen cents per cubic foot for timber averaging (80) eighty cubic feet, and classing B1, good, and half cent less for every five feet decrease in average, and with an advance of half a cent for each five feet increase in the average. In case any timber is delivered classing under " B one," it is not to be included in this scale of prices, but Wiggins & McMillan are to have the option of taking it at the market price ; and Wiggins & McMillan hereby agree to advance to the said Joseph W. Kelly, from time to time, such reasonable sums as may be needed to manufacture and haul said timber, .and raft it to the market, for which advances he is to pay the usual interest and commissions. Any balance due upon timber delivered after payment of the advances is to be settled in cash, and Joseph W. Kelly hereby gives Wiggins & McMillan a lien and mortgage as security for such advances upon all timber as fast as gotten out, wherever it may be, and do hereby authorize Wiggins & McMillan, or their agent, in case of any accident to the said Joseph W. Kelly, or whenever they may think it necessary for their ·security, to take possession of and brand said timber wherever it may be, and get it to market, leaving the final settlement of accounts with Wiggins & McMillan, or their representatives, until the timber reaches the market. It is also agreed and understood that in case of any hidden defect being found in said timber after the delivery of, and settle.ment for the same, the said Joseph W. Kelly guarantees to make good any damage caused by said defect to Wiggins & McMillan, and the said Joseph W. Kelly hereby agrees not to contract with any other party for the sale or delivery of timber until the fulfilment of this contract, and acknowl-

edges the receipt of ($50) fifty dollars as an advance on this contract.

"In witness whereof the parties to the contract have hereunto set their hands and seals, the day and date above writtten.          "WIGGINS & MCMILLAN, [L. S.]
                              "J. W. KELLY.          [L. S.]
"In the presence of M. McMillan."

The plaintiffs also introduced evidence tending to show that under the contract they had advanced to the said Kelly about seven hundred and forty-two dollars, and that they had received under the contract only "seventy-four sticks of timber."

The defendant introduced as a witness the said Joseph Kelly, who testified that at the time of making the contract with Wiggins & McMillan, "he had one hundred and ten good sticks of timber which was old; that this was not understood by himself to be included in the contract; but the contract referred, or applied, only to timber manufactured after its execution; and that the twenty-six sticks of timber in litigation was a part of the one hundred and ten sticks in existence when the contract was made."

The defendant then introduced the following instrument of writing, viz.:

"This is to certify that I do sell and transfer all my right, title and claim to one hundred and ten or fifteen pieces of hewn timber in Little Escambia creek, between Wolf Log and Gilmore landings, on Little Escambia creek, to Henry Morningstar, for which he is to pay me four hundred dollars, in money, in thirty days from date of this paper; and also four hundred and fifty dollars in merchandise, at different times, as he may call for them—the amount in full is eight hundred and fifty dollars. Also, in case of the death of said H. Morningstar, the said Mr. Joseph Kelly shall draw the said amount from the estate of the said H. Morningstar without administration.     Pollard, Alabama, April 26th, 1874.

                              "H. MORNINGSTAR,     [L. S.]
                              "J. W. KELLY,     [L. S.]"

The foregoing contract was recorded in the office of judge of probate of Escambia county, on the eighth day of May, 1874.     "Here the defendant closed."

The plaintiffs then offered evidence tending to show that at the time of the execution of the contract the said Kelly "stated that he had already gotten out one hundred and ten sticks of timber, and that this was the inducement to make the contract; and Kelly said to Wiggins that they need not

[Morningstar v. Wiggins & McMillan.]

·be afraid to trust him, as he had timber enough out to fill the contract."

Among other matters, the court charged the jury " that the second part of the contract contained a stipulation to give a lien and mortgage on timber " as fast as gotten out."

" That the meaning of this expression was a doubtful one, and that parol testimony had been admitted to explain it; that if the jury were satisfied from all of the evidence, both oral and written, that it was the intention of the parties to the contract that this expression should include timber in existence that had been manufactured when the contract was made, then this contract, or instrument, with such proof, would give the plaintiff such a title to the timber sued for, as would entitle them to recover in this action.

" That the third division of the contract contained a stipulation by which Joseph Kelly undertook to bind himself not to sell or contract for the sale of any timber; that this included timber already manufactured at the time that the contract was made, as well as timber to be manufactured afterwards, and that Joseph Kelly could not sell any timber to any other person so long as the undertaking with Wiggins & McMillan was not fulfilled, without a violation of his contract; and that if before this he undertook to sell any timber that he may have had when said contract was made, or that he may have manufactured afterwards, such sale would be void, and no title would pass thereby against the plaintiffs who held under this contract, which had been recorded.

" That it was contended that the plaintiffs had waived their liens under the mortgage, if they had any, to the timber sued for. But that if the proof showed that the said Kelly had offered to sell the plaintiff one hundred and ten sticks of ·timber, lying in Escambia river, and the plaintiffs refused to buy it, this of itself would be no waiver of their lien, if they had any, unless the proof showed that the said Kelly had ·tendered them, the plaintiffs, the exact number of sticks of timber to which they were entitled, at the place at which ·the timber was to be delivered by the contract; and to determine this the jury must look to all the evidence in the case."

And to this charge the defendant excepted.

J. M. WHITEHEAD, for appellant.

HERBERT & BUELL, for appellees.

MANNING, J.—According to the instrument executed
·VOL. LIX.

[Morningstar v. Wiggins & McMillan.]

November 27th, 1873, out of which this contest arose, in the first place, Kelly, one of the parties to it, " sells and agrees to deliver to the said Wiggins and McMillan, or their authorized agent, at Ferry Pass, in Escambia county, State of Florida, during the ensuing season, the following pitch-pine timber, to say (100) one hundred pieces at the following scale of prices ;" &c., the parties further agreeing, that " in case any timber is delivered classing under B one, it is not to be included in the scale of prices, but Wiggins & McMillan are to have the option of taking it at the market price, and Wiggins & McMillan agreed to advance to Kelly, " from time to time such reasonable sums as may be needed to manufacture and haul said timber and raft it to the market," he to pay the usual interest and commissions. In the second place, Kelly " gives a lien and mortgage as security for such advances upon all timber as fast as gotten out wherever it may be," and authorizes Wiggins & McMillan, " whenever they may think it necessary for their security, to take possession of and brand said timber, wherever it may be, and get it to market, leaving the final settlement of accounts with Wiggins & McMillan or their representatives, until the timber reaches market ;" and Kelly further agrees " not to contract with any other party, for the sale or delivery of timber until the fulfilment of this contract and acknowledges the receipt of $50, fifty dollars, as an advance" thereon.

In construing this instrument so as to give due effect to every part, and properly to enforce it as a whole, we regard this last stipulation, which prohibits the sale or delivery of timber by Kelly to any one else, unless this contract is fulfilled, as supplemental to the preceding clause, which creates a lien and mortgage, and as designed to prevent this security from being in any way impaired. Thus viewed the subsequent clause removes all the uncertainty which may be supposed to be produced in the former, by the expression " as fast as gotten out,"—and shows that the mortgage extended to any timber which Kelly should have from the time of the execution of the instrument until the fulfilment of his contract, and therefore embraced the timber sued for, which he had transferred to appellant. The Circuit Judge might have so instructed the jury in his charge to them, without reference to the parol evidence on the subject. Therefore, in the instruction excepted to, he committed no error to the prejudice of appellant.

Let the judgment be affirmed.